May it please the Court. My name is Mark Shenfield. I represent the petitioner, Appellant Raymond Henderson. I'd like to reserve four minutes of my time for rebuttal. And I'd like to focus at the outset of the argument today on the discrete issue whether there was an independent and adequate State procedural bar which precludes this Court from addressing the merits of the petitioner's claim that the State trial court violated Batson and its progeny by not requiring the prosecution to justify the use of the peremptory challenge to Louise Toberoff, even though it found a prima facie case of discrimination against women during jury selection. Of course, to be an independent... Now, are you relying on the Toberoff challenge as the strongest on appeal? I don't like to rank things as stronger or weaker. I think all arguments should be successful. I think it's just... I'm starting with it for two reasons. It's discrete, easy to address, and there's that recent State court case which is relevant to it. I sent a court citation to that case. Well, just help me with the threshold question. That is, was an objection made? Yes. It wasn't waived? No. There was a trial court rule on it? No. The trial court ruled that it wasn't part of a specific motion, whatever that means. There was an objection made. Toberoff, the prosecutor excused first the peremptory of black woman, the second peremptory of black woman, the third peremptory was Toberoff, the fourth... It was a white female. A white woman. The fourth peremptory the prosecutor used was to a third black woman. At that time, defense counsel raised a Batson objection on the basis that the prosecutor was systematically excluding black women from the jury. Toberoff was not a member of that class. The trial court heard that motion at the time it was made, found a prima facie case, but accepted the prosecutor's justifications, non-racial, non-gender justifications for excluding those black women, and then said any further objections will be reserved to the end of jury selection. Prosecutor came back, used her fifth peremptory for a fifth woman, a non-minority woman, used her sixth peremptory for yet another woman, making six in a row. At that point, defense counsel made a Batson objection, or Wheeler objection under the California precedent, on the basis that the prosecutor was systematically excluding women from the jury. And Toberoff is a woman. She's a member of that class. That's the motion. She's part of that motion. She's a member of the class. I mean, it baffles me, and I still don't get it, after looking at this numerous times over the years, why there's a waiver. There's certainly nothing in state law that says there has to be a contemporaneous objection to each and every use of a peremptory strike under Wheeler or Batson. In fact, it would be ludicrous, because suppose the first juror excuses black. How can you make a Wheeler motion, a Batson motion, as to one juror? There's no pattern. So what troubled me in the genesis of my question to you was that, as I understand it, the California court of appeal found that there was no specific objection to Toberoff. Not true, in your view? Well, there is no individual contemporaneous specific objection as to Toberoff. I think it's untrue that there was no objection as to she's a member of the class, she's a woman. He objected as soon as the pattern became clear to him that the prosecutor was excluding women. And as a recent state case, two weeks ago, reemphasized a Wheeler motion or a Batson motion challenges the selection of a jury, not the rejection of an individual juror. The issue is whether a pattern of systematic exclusion exists. Accordingly, once the trial court has found a prima facie case of improper use of peremptory challenges to exclude jurors based on perceived group bias, the burden shifts to the prosecutor to provide race-neutral explanations for all challenges involved. And all the challenges involved are challenges to people who are members of that class. But as I understand Judge Breyer's findings here, he relies on that passage from the court of appeal, and then says the court gave defense counsel the opportunity to raise a Batson objection as to Toberoff, but defense counsel never specifically included her in his gender-based class of discriminatory challenges. Page 23 of it. Well, the district court's rationale is a little bit different from what Respondent simply argues a state procedural bar adequate and sufficient. It's not. There's no state procedural rule that says that you have to raise a specific Batson objection as to each and every member of the class. Now, as I show, I believe this is my opening brief. I'm sure it's in the opening brief. I just think the district court, number one, misread the record. Five days after the Batson motion was made on the basis of gender, after the jurors had been selected and the trial court invited counsel to make his prima facie case of class discrimination, he began to go member by member of the people in the class discussing, you know, what their attributes were. And when he got to Toberoff, who at this point the court reporter is calling Kotroff, but it's the same person, he says, I would indicate that the third peremptory challenge exercised by the people was against another female, Mrs. Kotroff, who was not addressed in the earlier motion referring to the black women claim because she obviously wasn't black. She indicated she was employed as a teacher's aide. Her husband was employed. She had children. She obviously came from a very stable background. I mean, it's clear that what he's arguing is that there was no ground other than her gender to exclude her. But at that point, the prosecutor says, excuse me, I don't want to interrupt. He didn't make a razor wheel or motion at the time that Toberoff was peremptorily challenged and asked the court whether she was included within the motion. And the trial court said, as a separate subject of the motion, there was no motion filed, so I'm not going to consider the excuse of Ms. Toberoff as subject to the wheel or motion made. Now, then it goes on to say, the trial court goes on to say, but, you know, when you're discussing the prima facie case, either side can talk about any of the jurors. They have to, to make a prima facie case. But his ruling here, as a separate subject of the motion, there was no motion filed, so I'm not going to consider the excuse of Ms. Toberoff as subject to the wheel or motion made. Now, the trial counsel could have said, well, Your Honor, I think you're wrong. You know, that's part of our class motion. She's a member of the class. I take an exception, but there's no rule in California that you have to take an exception or argue with the trial court when it makes a decision. It ruled that the motion was untimely as to Toberoff, the first white female excluded. And, you know, even within the context of this very case, the trial court itself didn't apply, did not apply a similar timeliness rule. The prosecutor excused two black females, and there was no motion made until the third black female was excused, but it required the prosecutor to justify the peremptories as to each of the three. There's simply no contemporaneous objection rule in California. So I think the district court below was taking a slightly different tact than what the State is arguing now. The State's arguing an adequate procedural bar. There is no bar. That case that I cited the court to that was decided in the last two weeks makes clear that a motion, that's in motion, is made on behalf of the class, doesn't challenge the strike to any particular juror, but a pattern. Toberoff was a member of the class. He timely objected that there was discrimination based on gender. There's simply no default. Now, he could have obviously taken an exception to the trial court's ruling. I mean, he did go on to say, I think, Your Honor, they're relevant because there's no reason based on what they said other than their gender for the prosecutor to have excused them. I mean, there was no contemporaneous objection. I grant that. But there's no rule in California, and there's no rule in common sense that says you have to contemporaneously object. Obviously, you can't complain about a pattern of discrimination when the prosecutor or a party, it could be the defense counsel or a civil party, exercises one strike to a member of a minority group. You have to wait until a pattern is developed. So there's simply no State procedural rule. The two cases that the court has argued. I don't think there's anything in this record to suggest that the prosecutor had noticed that he had to offer a neutral explanation. Well, he did go ahead and offer one as to Ms. Healy, who was the fifth juror excused before the Batson objection based on gender was raised. She was a non-minority woman. He did offer an explanation. So, or she did, excuse me, offer an explanation. But I don't think the question is whether the prosecutor knew or should have known at this point that she had to offer justification. It was the trial court that made the error. It's a constitutional error requiring the issuance of the writ. I mean, we're looking for a State court error in the Federal habeas proceeding, not whether the prosecutor goofed up. I think she did as well. But you're not relying necessarily on the fact that there was no offering of an explanation or that the explanation, if it would have been offered, would be inadequate. Oh, yeah. I certainly think it would have based on what we know from the State court record. She was employed as a teacher's aide. Her husband was a sheet metal worker, as I recall. She had been burglarized once. She reported her crime to the police. She had served on a civil jury. The jury had reached a verdict. She looked like an excellent prosecutor's juror. She had been a victim of a burglary. She reported it to the police. I don't see any basis at all on the record justifying the peremptory used against her. And in light of the Promethasia case that the State court found, she shifted the burden to the prosecutor. That burden was never met. So I would like to just for a moment, do you want to speak to the prosecutorial misconduct? Yeah. I wanted to get to that. I just wanted to make one comment about Mr. Lattimore, who was the black man, one of the black men who was excused. I point out in the briefs, and I think they adequately address the question whether these reasons, the lack of life experience, didn't report this to the police, et cetera, et cetera, were sham excuses. But I just want to emphasize the procedural context of the Lattimore challenge. He was called to the jury to replace another potential juror who had just been excused. He was questioned by the judge. She was questioned by the prosecutor, by the defense attorney, and then tendered to the prosecutor. It was the prosecutor's turn to exercise a peremptory. And she said, well, we're satisfied with this jury, Mr. Lattimore on it, meets our satisfaction. We pass. Had the defense counsel also passed, he would have been a member of the jury. The prosecutor had no problem with him sitting on that jury at that point. What happened was instead of passing, the defense counsel used a challenge against a white male or a non-black male. He may have been Hispanic or some other ethnicity. The prosecutor objected on bashing grounds to that and immediately, immediately got rid of Lattimore, who just minutes before she said was perfectly acceptable. It's clear not only comparing his responses and her reasons to the other jurors and potential jurors that she had no problem with, but the only reason she got rid of Lattimore was in retaliation for the defendant defense counsel striking a non-black male from the jury. So I just wanted to emphasize that point. I do want to get to the misconduct, too. Well, part of the problem is that she was about to say something. You can bet your bottom boots that and then stop. Well, she may have, you know, I think the problem with the courts below, both the state court and the district court below, is that they want to take it back to the state court because they found that we hadn't demonstrated there actually was a warrant existing at the time. So they really didn't get to the merits that much. But you can't look at her argument in a vacuum and say, well, she was on the precipice of misconduct, but defense counsel managed to grab her, you know, before she stepped over by his objection. And then she came back moments later. Trial court tells the jury, I'm overruling the objection. The objection, which was stated in front of the jury, is that she's arguing facts that she knows are not true. And then she says. What is the evidence that of her knowledge as opposed to the knowledge of another assistant prosecutor? The one of the arresting officers testified at a pretrial suppression hearing that when they arrested him, they discovered that he had a parole warrant out for his arrest. She was at that hearing. It was noted in the police report, the initial police report, that he had a parole warrant because he was a parolee at large. I think it's completely incredible to believe in a third strike life case where the defendant takes the stand and says, I went into that backyard because that cop slowed down. I thought he was going to get me on a parole warrant, and that's why I ran. And a lot of that testimony that the prosecutor would not call or send one of her agents over to the parole office to say, look, here's what the guy testified to. Had he absconded from parole? Was there a parole warrant for him? I'm sure she must have looked into that, and she was present at the hearing. And most importantly, and I want to emphasize this, it doesn't make any difference. I believe she knew. I think she was lying about it, just as I think the excuses that she gave for most of her challenges were sham excuses. I think they're lies. But the United States Supreme Court has made absolutely clear that in the context of a government's constitutional obligation to act fairly when presenting evidence, that the question is whether the prosecutor knows or should have known, not whether the individual prosecutor knows. In the Giglio case, Giglio v. United States, that I cited in the brief, the U.S. Supreme Court says whether the nondisclosure was the result of negligence or design, it is the responsibility of the prosecutor. The prosecutor's office is an entity, and as such, it is a spokesman for the government. The California Supreme Court made the same point based on federal cases in Reed-Jackson, which I cite in my brief, and it correctly noted that the United States Supreme Court has held that the state's duty to correct false or misleading testimony by prosecution witnesses applies to testimony which the prosecution knows or should know. They added the emphasis, it is false or misleading. And has concluded this obligation applies to testimony whose false or misleading character would be evident in light of information known to other prosecutors, to the police, or to other investigative agencies involved in the criminal prosecution. She's charged with the knowledge. This was the heart of my client's defense. He's walking down the street. He's got this bag of extra clothes and painting because he was going over to paint his daughter's apartment. The cop goes by and slows down and looks at him, and he thinks he's about to be arrested because he believes he has a parole warrant. So he ducks into this backyard, and he's going to go through the backyards back to his daughter's apartment. And when the police come in instead, he runs. That's the heart of the defense. I believe she knew. I believe the record makes clear that she knew. She obviously should have known that there was a parole warrant. And instead, she asked the jury to believe that he lied because there, in fact, was no parole warrant. She didn't have to complete the you bet your boots statement. The jury knew what she was driving at. She said a person who lies in one thing can be distrusted in everything. Now, he said he had a parole warrant out for him, not that he believed, as the state now makes a big case over it. She said he had a parole warrant. That's what his case was. And then she's saying he lied about that. If there was any evidence of a parole warrant, you would have heard it. There was no evidence of a parole warrant. I assume defense counsel had a rather tough problem himself because it would have been very simple for defense counsel to offer the parole warrant, but that would cut against his overall image, I suppose. No, I don't believe so. I do raise that as one of the grounds for ineffective assistance to counsel. I'm sure that he simply assumed that the prosecutor was not going to come in and challenge the assertion that there was a parole warrant. Well, you had the opportunity. At least the defense counsel had the opportunity to offer the parole warrant at that time. Well, not during argument. He didn't. That's right. And this is a rebuttal. This is not even the opening part of closing arguments. This is rebuttal. He didn't have a chance to get up and rebut it, which made it particularly exceptionally prejudicial. I see that my stoplight is on. Go ahead. Well, just to clarify for the time being. Now, the defendant testified that his motive for running was that he believed there was a warrant out. Yes. Now, his testimony was not taken as any representation of fact that, in truth, there was a warrant. It was his reason for running. He thought there was a warrant. Right? Yes. And that's all that really counted. It was his belief that there was a warrant, whether that belief is accurate or not, that counts. Isn't that true? Well, that's correct in an abstract sense. Well. But, I mean, he said he believed there was a warrant because he had violated the terms of probation. I know. I'm sorry. I don't mean to interrupt you. All right. But supposing that the truth turned out that there was no warrant. A jury could still find that the reason he ran was because he was afraid there was. And that would be as good a motive for running as if there was a warrant out, if he thought there was. Right? That's true. But, again, I'm sorry. Go ahead. Because I think I know where you're going. Yeah, all right. Yet, they're ahead of you. Go ahead. Go ahead. Certainly, by implying that there was, in fact, no parole warrant, the prosecutor was also implying that the testimony about violating the terms of parole and absconding from supervision was also a lie. Because had he done that, there would have been a parole warrant. So that's point number one. And point number two, I mean, practically speaking, a person in his position could not honestly say that there's, I know as a fact that there's a parole warrant for him. All he can say is, I violated the terms of my parole, and I know they do their job, and, therefore, I presume there's a parole warrant for me. They're not going to go into the parole office and say, do you have a warrant for me, and then run. So, I mean, his testimony sounds legitimate. It sounds honest. Because he didn't say, yes, I knew there was one for me. He couldn't have known until it's executed. He said, you know, I violated parole, so I presume there was one. And that's why I ran. Now, the prosecutor undermines that by falsely implying that he didn't violate parole, that there was, in fact, no warrant for his arrest, and, therefore, the whole, all of his testimony was a pack of lies. My only concern is that neither side, in presenting the evidence, thought it was sufficiently relevant to really prove which way it was. Yet the defendant legitimately could, if it's the fact, say, I was afraid there was a warrant out there. That's the reason I ran. Whether there's a warrant or not, that's the reason I ran. So, now, this assertion that this prosecutor was guilty of asserting a falsehood supercharges almost an irrelevant issue, does it not? No, I don't believe it's irrelevant. I believe it's relevant both to the ineffective assistance of counsel claim, because it would have bolstered, it would have strengthened his testimony about his belief in the warrant, because, in fact, there was one. Well, I think you understand my concern, is that if we're dealing with her undertaking to tell a falsehood on a marginal issue, that's my only concern. And I think you've answered it. No, but I don't disagree. I don't agree that it's a marginal issue, because I think it went to the heart of his testimony, his belief that there was a warrant. Very good. Thank you. Thank you, counsel. We'll now hear from the State. Mr. Ott, again. Good morning again. I'll address these claims that were raised in order, unless the Court would prefer me to digress as to the Tovaroff objection. Contemporaneous objection rule is very well-founded in every jurisdiction. It's very well-founded in the Wheeler-Bassin context in California. I cited two Supreme Court cases that say exactly that. The issue here is whether you need to place an objection on each individual's head that's being challenged. And the answer, I believe, is yes. There is, counsel says, that there is no California authority stating that you need to do that. Well, there isn't. But there also isn't any suggesting that the otherwise is. Well, wait a minute. Wait now. If that's the rule, then every challenge has to be faced with a Batson objection. Well, there can't be a challenge that is not susceptible to ultimately being based on a sexist motive. There can't be a challenge that cannot ultimately be discerned to be based upon a racial motive, if we can discern a person's race. Now, are you saying that we should instill a formula that says every challenge has to be, well, this guy is a man. I object because he's a man. Then somebody else challenges somebody else. The other side has to say, I object because that juror's a woman. And we go through this with every juror? You're not saying that. No, Your Honor. I think, if I understand you correctly, I think what you're talking about is the timing of it. And I'm not suggesting that it needs to be contemporaneous with the challenge. You can ‑‑ trial courts handle perimetries in various ways. Sometimes they allow the challenges to be made at the end, sometimes contemporaneous. I think counsel could have made a challenge to Toberoff towards the end. He could have let her be. What was wrong with when he did it? He said he first challenged on the base, or asserted, that this was a systematic exclusion of black women. Then later on, he says, this is not only a systematic exclusion of black women, this is a systematic exclusion of women no matter what color they are. But he doesn't get around to that until he sees a couple challenges of non‑black women. What's wrong with that? Why isn't that timely? Well, that is timely, but there still needs to be ‑‑ you still need to name who you're talking about. And the reason for that is ‑‑ What about all women? Well, if you say, I raise a ‑‑ I suppose that could be possibly valid, or if it's accepted by the court at least. That's how I make my prima facie case. I show you this pattern. You have excused seven, and they're all women. But sometimes the first woman has grounds for ‑‑ excuses that are obvious to everyone. And defense counsel or prosecutor thinks, I'm not going to raise a Batson challenge to that now or later, because I can tell that that's valid. I can tell that those reasons ‑‑ she hated police. She hated the prosecutor. I'm not going to bother with that. You still make the challenge later on, the overall challenge. But here, defense counsel did name the challenged veneer persons when he raised the challenge in the trial court. I think the district court picked up on this, tried to hint or point out that you're not making a specific challenge to Toberoff, I see, in certain words, and basically gave him the opportunity to point out that, yes, she is part of my challenge. She is part of my challenge to ‑‑ was it women? Not challenge. I'm sorry. My motion. But he didn't. He didn't include her in that. And there is nothing in California case law suggesting that a general objection retroactively places an objection on the head of each person in that class. And these cases, McGee, Gore, and I think it's Robinson, don't suggest that. And here's why. In McGee, there was a specific challenge to specific individuals. No prima facie case was made. Let's say specific challenge, it was a peremptory challenge, and that's an objection based on group A. The court found no prima facie case. Later down the road, it did find a prima facie case as to group A. What the court of appeals said is you need to retroactively revive that other objection that was made. That was a specific objection that was made. The court did say you need to go back and look at her, but she was part of a specific objection identifying her. Now, are you saying the court specifically gave that opportunity in this case? Well, the court did point out, as the district court pointed out, when the discussion of the groups was occurring, the court pointed out that something to the effect of I noticed Toberoff isn't, you're not mentioning Toberoff as part of your specific Wheeler objection, and I'm not considering her as such. The counselor could have spoken up and said, yes, she is. Or, yes, I do intend to object to make my challenge based on her as well. And the court laid it out there, basically gave him the opportunity to clarify that, and he didn't. And I think it's fair to assume that he didn't because maybe there was something he saw about Toberoff that made her exclusion, or her challenge, I'm sorry, obvious. I don't know. But there wasn't a specific. He might have been willing to accept her, is that what you're saying? Well, he might not have. I think counsel didn't identify Toberoff as part of his challenge, and it's fair to assume that he didn't because maybe he saw something about that challenge that was obvious. In other words, she, and I don't know what that was. But he would be content to let her be challenged and let her off. I'm trying to. That's what I read from this record, that he was not, that he was content with her. He was not including her in his motion, even though he was given the opportunity to. Gore, the other two cases, Gore and Robinson, Gore is essentially a timeliness issue. In Gore, there was a procedure whereby the Batson motions were raised after the jury had been impaneled, and the Court of Appeals said, you can still raise those under the peculiar instance of this case. That was a timeliness issue. Robinson is more like McGee, where you're reviving objections to which no prima facie case was made, but there still were specific objections identifying, and you can see in the opinion, it says juror number 42, the objection was a Wheeler motion or Batson motion was made as to juror number 42, 43, and those weren't sustained. Well, later, there is a prima facie case made as to that class. The Court says, again, you need to go back and revive those specific objections. I cannot visualize how anybody says this works. Now, it's been a long time since I've been a trial judge. But when you start selecting a jury, surely you don't expect the first challenge to draw a Batson objection. I agree with that. If you had two minority people out of 50 in the room, and the first one was a minority and the second one was a minority, now you might say this is a pattern because this is 100%, right? And you might hear an objection. Now, when you hear that first objection, that is, when you hear that first challenge, usually that juror is excused and permitted to go, right? You don't come back and reconscript that juror. That juror is gone. And when the objection comes in the Batson, it's to the next one. And then if the judge says, well, now I've listened here to nobody giving any reasons. I've just witnessed a whole bunch of women or a whole bunch of men or a whole bunch of minorities or a whole bunch of non-minorities go. And now I conclude that's a prima facie case that there's something going wrong. Now you've got to explain. Now you've got to explain, I think, everything you've been doing in order to make this challenge that is at issue legitimate. Am I wrong? You need to explain everything you've been doing as to that class. Yeah, that's what I mean. Whatever the Batson challenge may be. And if you don't, the next one is illegitimate, right? The next challenge? The challenge that is at issue. That's correct. Do you go back then? Do you go back and say, well, now we've got to find out whether this number two that you excused a week ago, we've got to go out and find her and bring her back because we think that one was Haywire or do we just look at the one that's in front of us? Well, it depends on the motion. I think you can and should discuss everyone. And here, Toberoff was included in the discussion of the pattern. Yeah. But as the trial court pointed out, I don't see you, defense counsel, making her part of your Wheeler motion specifically. Didn't say anything. It's certainly not a perfect system and trial courts do it so many different. Well, my response is, with respect to not making her part of the motion, so what? What is at issue? It's the challenge that's pending, is it not? It is. It's the challenge that's pending. And if all of the prior challenges of that class are legitimate, then there's reason and some legitimate reason is given for this one, then the court is going to say I find no bats in violation. But it doesn't take all of them to be bad in order to make this one foul. If any one of them is foul, it's bad enough. Right? Because you can't get away with even a single discriminatory preemptory challenge. Right. Now, so what difference does it make whether there was an objection to her yesterday in this case? Well, if I understand correctly, there isn't insofar as no pattern of discrimination was found as to women. Right. Of which she was a member, the class of which she was a member. And the counsel didn't see a pattern of excluding, systematically excluding women until he saw both black and non-black jurors, women jurors being challenged. Then he added the gender claim. Did he not? That's correct, Your Honor. All right. Now, how was he to fall awake to the fact that this, when this non-black woman was challenged yesterday, that that was part of a pattern until he saw something more? That's the struggle I'm having, see, to say, well, somehow he's to be faulted for not having articulated some motion or assertion that this was foul when it happened. How is he to know? Well, our position isn't that he had to do it at the time it happened, but at some point in the process he needs to do it. Now that raises the problem that you point out. Well, she's down the street now. My response to that is that it's certainly not perfect in that respect. I think the counsel probably are charged with making a record, if not notes, of their peremptory so that because Tovaroff is down the road now, if she's objected to later, if there's an objection on her head later, that he can explain those, or he or she can explain those. But our position is, and I clarified that, that counsel was charged with making or faulted with not making it at the very time. It's just that he needed to make it at some point, and he didn't. He did include her in his discussion later, but he didn't say she's part of my Wheeler objection. Okay. Counsel, I have some concerns about the allegations of prosecutorial misconduct. Let me ask you a hypothetical. Assume for the sake of the question that she, in fact, did know about the existence of the parole violation. Is there any way in which her statement can be defended? Yes. The statement she was about to make? Well, let me just get it in front of us here, and we'll talk it through. I'm trying to find it here. Here it is. This is a rebuttal argument for the jury. She says Mr. Henderson suggests to you that the reason he took off from the police was because he had a parole warrant. I urge you to disregard the entire testimony, Mr. Henderson. He has an incredible motive to lie. He's done this before. The judge will read you a jury instruction that says if you find a witness willfully false in one part of his testimony, you may disregard the entirety of his testimony. If there was any evidence that this defendant had a parole warrant, you can bet your objection. All right. Assuming that she, in fact, knew there was a parole warrant, that's indefensible, isn't it? If she was about to say what it appears she was about to say, that was improper on a couple of grounds. It's admittedly improper if she was about to testify to the existence or nonexistence of facts that weren't part of the record. It was also improper as an officer of the court to state that there wasn't that evidence and there really was. I agree with that. But no court has ever found that there was evidence that she knew. And I'd like to explain why that's very reasonable, not just because there isn't evidence on this record, but if you look at the circumstances, it's very reasonable to explain why she didn't know. And one is the sole fact that the appellant relies on is the fact that she was present at a hearing, at a pretrial hearing, where an officer, an arresting officer said, I knew he was a parolee at large with an outstanding warrant. The prosecutor here was not the prosecuting attorney at that hearing. She was present. There was an appearance on the record. She was not the prosecuting attorney. I don't know if this was a lateral prosecution thing or what have you, but she was in the courtroom and I don't know any more than that. Well, imagine a felony prosecutor with a large caseload at a pretrial hearing sometime before trial and this comment is made. She doesn't know that Henderson, however much later at trial, she doesn't know what he's going to testify to, let alone that he's going to testify and the basis of his defense is going to be, I thought there was a parole warrant. She has no reason to put that in the back of her head, nothing to indicate that she was even listening to this comment as this guy is on the stand. She's not the one questioning him. She just had no reason to know that. And as I say, Henderson hadn't testified yet. She had no reason to know that this would even be relevant. The other thing is, and no court has addressed this yet, but I pointed this out before, Henderson contested the validity of his arrest, detention. That was an absolute defense. The parole warrant, a warrant for his arrest was an absolute defense to that motion. The prosecutor didn't put that in. It strongly suggests to me that she didn't know it was there. He says, you held me without probable cause, and there's an existence of an arrest warrant that she knows about. I think she would have done that. Those facts are clear, and I think it's reasonable to assume from that that had she known about it, she would have put it in to nip that motion in the bud, but she didn't. Nevertheless, assuming that she did know, I do agree it was improper. However, the statement was cut off. The statement she did make, that there wasn't any evidence, was correct and proper, and the jury was also instructed, on the usual instructions about argument, that these aren't facts. These are argument of counsel. The juries are presumed to be aware of that and understand that. And we still, I believe in prejudice, a few things. One is the statement that was made was accurate. The statement that wasn't made wasn't made, was cut off. And you can say, well, the jury knew what she was about to say, but she still didn't say it, and then you've got the instructions to say this is argument. And the jury was also told to not allow prejudice, passion, and sentiments to enter into this. The point of the remark also wasn't disputed by Henderson. He believed he had a warrant. On that note, going to the IAC, if I may digress to that, because I see my time is about up. This is a classic tactical decision. You've got, you can put the warrant in, but it's going to further dam your client. We've got a guy here with priors, and he can't even conform himself to parole. He can't even show up to his parole officer. It just doesn't make him look good. And you put that in, you've got that. You leave it out, true, it doesn't bolster his testimony, but it's not necessary for his testimony because he's saying he believed he had a warrant, and that's what's at issue. So I think it was a classic tactical decision, and absent some extraordinary circumstance, the discretion of counsel in not putting that warrant in should be given deference. The same, I don't know if this was raised, but the same point can be made on the stipulation. You've got two principal elements and a burglary charge, and counsel is asked to stipulate away half of his case, which is intent, before trial, before his client has testified. I think it's eminently reasonable to not give that up at that early stage. I see my time is up. If the Court has no questions, I'm willing to submit. Further questions? Thank you. Thank you, counsel. The case just argued will be submitted for decision, and the Court will recess.
judges: Hall, O'scannlain, Leavy